ELLIS, Judge:
By this appeal, Highlands Insurance Company is attempting to recover from Percy Insurance Agency, Inc. and Kenner O. Miller damages which it suffered as a result of having bonded a construction contract for Wilbert Carbo, doing business as C & C Contractors, who subsequently defaulted on the contract.
Prior to the events surrounding this law suit, Highlands had written a number of bonds on contracts which had been awarded to Carbo. These bonds were all written through the Percy agency, and had been handled for Percy by Mr. Miller. When the contractor was preparing to bid on a contract, he would notify the agency, *346 which would, in turn, contact Highlands, usually by telephone. Highlands would be told the type of job and the amount of the bid to be made. If Highlands was satisfied that it would be willing to write the bond for the contract, it would authorize the agency to issue a bid bond. The bid bond provided that, if the contractor was awarded the contract, he would enter into it, and furnish a proper bond, or else pay a penalty of 5% of his bid. It seems clear from the record that, generally, the authority to write a bid bond carried with it the authority to write the bond on the contract, in the absence of unusual circumstances, such as a large difference between the low bid and the second low bid. It also seems clear that bonds would not be written by Highlands unless it was satisfied as to the soundness of the financial condition of the contractor.
The events surrounding this controversy began on August 31, 1970, when Mr. Miller called Claude Walker, a bond underwriter for Highlands, and requested authority to issue a bid bond in connection with a bid being made by Carbo on a job for Avoy-elles Ward One Water System, Inc. Mr. Miller read to Mr. Walker, over the phone, a June 30, 1970, financial statement for Carbo. On the basis of the statement, Mr. Walker authorized the issuance of the bid bond on the job.
Mr. Walker testified that he had, by letter of August 10, 1970, requested an audited financial statement for Carbo, as of June 30, 1970. He further testified that, after the above conversation, he sent a copy of the August 10 letter to Mr. Miller, with a note on the bottom that no final bonds were to be issued for Carbo until the statement had been received and reviewed. Neither the letter nor the note were placed in evidence.
On September 28, 1970, the financial statement was finally forwarded to Mr. Walker. On October 1, 2, 6, and 8, 1970, Mr. Walker requested additional information from Mr. Miller relative to the statement and to the bids made by Carbo.
At some point during this time, Mr. Car-bo was advised that he had been awarded the Avoyelles contract. On October 10, 1970, Mr. Miller mailed the contract and an executed but undated bond, to an incorrect address. On October 13, he advised Walker that Carbo was the low bidder on that job, but did not tell him the bond had been issued.
On October 16, Mr. Miller prepared another bond, to replace the one previously misdirected, which was forwarded to Avoyelles by Mr. Carbo. The contract to which the bond was attached was not finally executed until November IS, 1970, and the bond was then dated that date.
During the latter part of October, Mr. Walker discovered that some of the information on Carbo’s June 30 financial statement was not correct. He wrote Mr. Miller on November 3, 1970, and advised him that Highlands would write no further performance bonds for Carbo, and that he would have to get his bond for the Avoy-elles job from someone else. The letter purports to enclose a copy of the August 10 letter and the August 31 note.
No action was taken by Mr. Miller at that time to attempt to prevent the execution of the contract or to advise Mr. Walker that the bond had already been issued. No bill for the bond was ever sent Mr. Carbo, and no fee was paid to Highlands nor was any notice that the bond had been issued ever sent by Percy. When the existence of the bond was discovered by Highlands, it was because of a claim made by one of Carbo’s suppliers. At that time, it was discovered that neither Highlands nor Percy had any record of the bond whatsoever.
As a result of Carbo’s default, Highlands was forced to take over the Avoyelles job and complete it. It is the damage suffered by it which it is presently attempting to recover from Percy and Miller. Various other disputes arose, with the contractor who finished the job and with Avoyelles, and Highlands also sought judgment *347 against Carbo. These disputes have either been' settled, or not appealed, and Highlands obtained judgment against Carbo for the amount of the loss. However, the trial court denied the claim as to the Percy agency and Mr. Miller, and it is from this portion of the judgments that Highlands has appealed.
It is clear that, if Highlands is to recover from these parties, it must be on the basis that Mr. Miller exceeded his authority. Highlands claims that he did so in this case because he was specifically told to issue no final bonds to Carbo until the June 30, 1970, financial statement had been verified.
In his testimony, Mr. Miller denied that he had ever received such instructions or that his authority had been abridged in any way. Because of the failure of Highlands to produce in evidence the August 10 letter and the August 31 memorandum, the resolution of the question becomes one of choosing between the testimony of Mr. Walker and that of Mr. Miller.
The trial judge felt that Highlands had failed to prove its contention by a preponderance of the evidence, despite the rather suspicious circumstances surrounding the issuance of the bond. He was of the opinion that Highlands’ own loose business practices were the cause of its loss.
We find no manifest error in his factual conclusion. Had the August 10 and August 31 writings been placed in evidence and had they been as represented, Highlands’ position would be unassailable. However, absent these items of evidence, there is nothing to indicate that Mr. Miller did not issue the bonds in the ordinary course of business except for Mr. Walker’s testimony, which is uncorroborated. Mr. Walker’s own testimony on cross examination casts considerable doubt on the existence ab initio of these documents.
The judgments appealed from are therefore affirmed, at Highlands’ cost.
Affirmed.